U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

JUL 07 2014

CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETVILLE DIVISION

JENNY CRAIG, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

TWININGS NORTH AMERICA, INC.

    Defendant.

No. 14-5214 TLB

[Circuit Court of Washington County, Arkansas, Case No. CV14-928-4]

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, Defendant TWININGS NORTH AMERICA, INC. ("Twinings" or "Defendant") hereby removes this action from the Circuit Court of Washington County, Arkansas, to the United States District Court for the Western District of Arkansas. Twinings respectfully submits that removal to this Court is proper because: (1) this Court has original jurisdiction over the case, and (2) the Western District of Arkansas is the district encompassing the place in which the state court litigation is pending. Twinings appears specifically for the purpose of removal and preserves any and all defenses available under Rule 12 of the Federal Rules of Civil Procedure.

In support of this Notice of Removal, Twinings respectfully states as follows:

1.     Plaintiff, Jenny Craig ("Plaintiff"), individually and on behalf of a purported class of similarly situated consumers, filed a complaint (the "Complaint") on May 22, 2014, in the Circuit Court of Washington County, Arkansas, bearing the Case No. CV-2014-928-4 (the "Removed Action").

1

2618699.1

2. On June 6, 2014, Twinings' registered agent for service, The Corporation Trust Company, Wilmington, DE, received a copy of the summons and Complaint in the Removed Action. Enclosed with the copy of the summons and Complaint were the Plaintiff's First Set of Interrogatories and Plaintiff's First Set of Document Requests. A true and correct copy of these documents received by Twinings' registered agent for service on June 6, 2014 is attached hereto as Exhibit A.

3. Receipt of these documents was the first notice to Twinings of the existence of a pleading containing a claim for relief asserted by the plaintiff that could be removed to this Court. This Notice is filed within thirty (30) days of receipt of service of these documents, and is therefore timely pursuant to 28 U.S.C. §§ 1446(b) and 1453(b).

## THE PARTIES

4. Upon information and belief, and as stated in the Complaint, Plaintiff is a resident of Fayetteville, Washington County, Arkansas. Compl. ¶¶ 22.

5. Twinings is a Delaware corporation with its principal place of business in Clifton, New Jersey.

## THE PLAINTIFFS' ALLEGATIONS

6. The Complaint alleges, in short, that Twinings marketed and sold tea products with labeling that is unlawful, misleading, deceptive, unfair and fraudulent. See, e.g., Compl. ¶¶ 10, 17. Plaintiff asserts five causes of action based on these labeling claims: namely, violation of the Arkansas Deceptive Trade Practices Act, Arkansas Code Annotated § 4-88-101, et seq. ("ADTPA"), unjust enrichment, breach of the implied warranty of merchantability, breach of express warranty, and negligence. Compl. ¶¶ 81-124.

7. The putative class that Plaintiff seeks to represent consists of: "All persons who purchased Twinings' Irish Breakfast Tea and English Breakfast Tea, in Arkansas, since May 22, 2009 (the "Class")." Compl. ¶ 71.

8. As set forth more fully below, this Court has jurisdiction over this matter and it is properly removed pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## JURISDICTION UNDER CAFA

9. This action is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

10. The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (partially codified at 28 U.S.C. § 1332(d)), vests the federal district courts with original, diversity jurisdiction over any (1) purported class action in which (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (3) the proposed class contains at least 100 members, and (4) the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (5)&(6). This case meets these requirements.

11. The Complaint alleges that "the aggregate amount in controversy will not exceed the sum or value of $4,999,999.00, including compensatory damages, and restitution" and, under a different formulation, that "[t]he aggregate amount in controversy of the Class Members' claims does not and will not exceed $4,999,999.00, excluding interest." Compl. ¶ 29. To the extent that Plaintiff seeks to evade CAFA's jurisdictional threshold through these allegations, they must be ignored as a matter of law. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified."). Indeed, this Court has previously

recognized that *Standard Fire* "definitively states that such stipulations may not prevent removal under CAFA." *Basham v. American Nat. County Mut. Ins. Co.*, No. 4:12-CV-4005, 2013 WL 5755684, at *2 (W.D. Ark. Oct. 23, 2013).

### A. The Action is a Class Action Under CAFA

12. First, the case is a purported class action. See Compl. p.1 ("Plaintiff brings this action on behalf of Plaintiff and a statewide class of Arkansas consumers ...."); Compl. ¶ 71 ("Plaintiff brings this action as a class action pursuant to the Arkansas Rule of Procedure 23 on behalf of the following class: All persons who purchased Twinings' Irish Breakfast Tea and English Breakfast Tea, in Arkansas, since May 22, 2009 ....").

### B. The Parties Are Diverse

13. Second, this case satisfies CAFA's minimal diversity requirement. 28 U.S.C. § 1332(d)(2)(A).

14. The Complaint states that Plaintiff is a resident of Fayetteville, Washington County, Arkansas. Compl. ¶¶ 22.

15. Twinings is a Delaware corporation with its principal place of business in Clifton, New Jersey. See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business ....").

### C. The Class Includes At Least 100 Members

16. Third, Plaintiff alleges that she and "thousands of others in Arkansas" purchased the tea products at issue in her Complaint (Compl. ¶ 7), and estimates that "the Class numbers in the thousands." Compl. ¶ 74. These allegations are sufficient to satisfy CAFA's requirement that the aggregate class include 100 or more class members. See *Hardig v. Certainteed Corp.*,

2012 U.S. Dist. LEXIS 15852, at *5 (W.D.N.C. Feb. 9, 2012) ("The court must construe Plaintiff's Complaint as drafted [which alleged that the 'Class is composed of thousands of persons'], and finds that the class could potentially consist of thousands ...") (denying motion to remand).

### D. The Complaint Places More Than $5 Million In Controversy

17. Finally, the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of costs and interest.

18. As the Eighth Circuit has explained, "a party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum." *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009). Moreover, a removing defendant's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944-945 (8th Cir. 2012).

19. In analyzing the amount in controversy, the question is "not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are." *Bell*, 557 F.3d at 959 (internal quotations, citation and emphasis omitted). If a defendant "prove[s] by a preponderance of the evidence that the amount in controversy is satisfied, remand is only appropriate if [the plaintiff] can establish that it is legally impossible to recover in excess of the jurisdictional minimum." *Id.*

20. CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

1. <u>Damages, Restitution, and Disgorgement</u>

21. Plaintiff requests an award of "damages, restitution, or disgorgement" in an amount to which Plaintiff and the putative class are entitled. Compl. p. 24, Prayer For Relief ¶ B. As detailed below, the Complaint asserts that Plaintiff and the putative class are entitled to damages equaling as much as the entire purchase price that was paid by the Plaintiff and other putative class members for the Twinings' products at issue in the Complaint.

22. In particular, Plaintiff claims that, as result of the ADTPA violations alleged in her complaint, she and other putative class members are "entitled to damages and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore Plaintiff and the members of the Class who purchased Defendant's Misbranded Food Products in Arkansas <u>any money</u> paid for Defendant's Misbranded Food Products." Compl. ¶ 93. (emphasis added)

23. In addition, Plaintiff seeks restitution of "the monies paid" to Twinings for the tea products at issue in the Complaint under a theory of unjust enrichment. Compl. ¶ 96.

24. Finally, Plaintiff seeks damages of up to the entire purchase price that Plaintiff and other putative class members paid for Twinings' products under a theory of breach of implied warranty (Compl. ¶ 107), as well as damages for breach of express warranty (Compl. ¶ 118), and damages for injury and loss under a theory of negligence (Compl. ¶ 124).

25. Attached hereto as Exhibit B is the Declaration of Daniel R. Martin. In his Declaration, Mr. Martin estimates that, for the 5-year period to May 22, 2009, the total dollar value of sales in Arkansas for all varieties of Twinings' Irish Breakfast Tea and English Breakfast Tea products with labeling that included the statements "Natural source of

antioxidants" or "Tea is a natural source of antioxidants" (see, e.g., Compl. p. 1; ¶¶ 4, 7, 11, 16, 47) was $457,202.52. Exhibit B ¶ 7.

### 2. Punitive Damages

26. The Complaint is silent on whether Plaintiff and other putative class members seek punitive damages (i) with respect to qualifying members of the putative class, pursuant to Arkansas Code Annotated § 4-88-202(b) for elderly and other specifically designated persons and/or (ii) for the entire putative class, based on allegations of Twinings' fraudulent and deceptive conduct. Plaintiff asserts, however, that she will "seek[] the maximum possible recovery for the Class." Compl. ¶ 77.

27. Defendants deny engaging in any conduct that would give rise to punitive damages. Nonetheless, Plaintiffs' factual allegations must be accepted as true for purposes of analyzing the amount in controversy. See, e.g., *Wiemers v. Good Samaritan Soc'y*, 212 F. Supp. 2d 1042, 1048 (N.D. Iowa 2002).

28. Plaintiff's allegations of deceptive and misleading labeling sound in fraud, and the Complaint alleges "fraudulent" conduct in the marketing and sale of Twinings tea products with respect to "material" facts. See, e.g., Compl. ¶¶ 10, 76, 89. In particular, the Complaint asserts that Twinings "engaged in a scheme of offering Misbranded Food Products for sale to Plaintiff and members of the Class by way of, inter alia, false and misleading product packaging and labeling," (Compl. ¶ 114), that Twinings "knowingly and intentionally misbranded" its tea products (Compl. ¶ 99), and that Twinings repeatedly made unlawful and misleading claims about antioxidants "[i]n order to appeal to consumer preferences." Compl. ¶ 7. The Complaint further claims that Twinings' "misrepresentations are part of an extensive labeling, advertising

and marketing campaign" that is "designed to increase sales of the products at issue." Compl. ¶ 64.

29. Furthermore, Plaintiff alleges that she "reviewed the labels on the respective Twinings Products that she purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products." Compl. ¶ 10; see also id. ¶¶ 41 (Plaintiff "was misled because she erroneously believed the implicit misrepresentation that the Twinings products she was purchasing were beneficial, healthy and met the minimum nutritional threshold to make such claims."); 52 (pleading reliance); 58 (pleading reasonable reliance).

30. The allegations in the Complaint could form the basis for a possible fraud claim by Plaintiff and the putative class. Under Arkansas law, the elements of a claim for misrepresentation or fraud are: "(1) that the defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation." *Harrill & Sutter P.L.L.C. v. Kosin*, 424 S.W.3d 272, 275, 2012 Ark. 385 (Ark. 2012); *Ray Dodge, Inc. v. Moore*, 479 S.W.2d 518, 522 (Ark. 1972) ("If, then, there was evidence tending to show that appellant intentionally performed a deliberate act with the intention of misleading a prospective purchaser about a material matter to his injury, it was proper to permit the jury to consider the award of exemplary or punitive damages.").

31. Arkansas law allows punitive damages to be awarded on claims for fraud. See *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 785 (8th Cir. 2010). Where punitive

damages are recoverable, both actual and punitive damages are to be included in determining the amount in controversy. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943); *Allison v. Security Ben. Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) ("Punitive damages are included in determining the amount in controversy.") (citing *Bell*, 320 U.S. at 240); *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.*, 332 F.2d 499, 502 (8th Cir. 1964) (punitive damages to be included in the amount in controversy).

32.  Punitive damages can potentially be awarded under Arkansas law even though Plaintiffs do not expressly request them in the Complaint. The Arkansas Rules of Civil Procedure provide that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Ark. R. Civ. P. 54(c); see also *Bowles v. Osmose Utils. Servs.*, 2004 WL 4910143, at *9 (W.D. Ark. Dec. 21, 2004), *aff'd*, 443 F.3d 671, 675 (8th Cir. 2006) (awarding punitive damages, after a bench trial, where there was no prayer for punitive damages in the complaint). As this Court has recognized, where punitive damages are potentially available on the allegations asserted in the complaint, such damages may be included in calculating the amount in controversy under CAFA, even though the plaintiff has not expressly requested them. See *Basham v. American Nat. County Mut. Ins. Co.*, No. 4:12-CV-4005, 2013 WL 5755684, at *6 (W.D. Ark. Oct. 23, 2013); *Knowles v. Standard Fire Ins. Co.*, 2013 WL 3968490, *10 (W.D. Ark. Aug. 2, 2013); *Thatcher v. Hanover Ins. Group, Inc.*, 2012 WL 1933079, *6 (W.D. Ark. May 29, 2012).

33.  Here, considering all of the elements comprising the amount in controversy, CAFA's jurisdictional threshold is met by an award of punitive damages calculated anywhere in the range of 7.2 to 10 times the amount of compensatory damages, that is, punitive damages of between $3,291,858.14 and $4,572,025.20. See *Ross v. Kansas City Power & Light Co.*, 293

F.3d 1041 (8th Cir 2002) (10-to-1 ratio upheld); *Kimzey v. Wal–Mart Stores, Inc.*, 107 F.3d 568 (8th Cir. 1997) (10-to-1 ratio upheld); *Superior Federal Bank v. Jones & Mackey Const. Co.*, 219 S.W.3d 644, 653 (Ark. Ct. App. 2005) (17.6-to-1 ratio upheld).

### 3. Attorneys' Fees

34. Although the Complaint does not expressly request an award of attorneys' fees, it pleads a cause of action for violation of the ADTPA. Compl. ¶¶ 81-93.

35. The ADTPA permits the recovery of "reasonable attorney's fees" in suits by private litigants who suffer actual damage or injury as a result of an offense or violation of the statute's provisions. A.C.A. § 4-88-113(f). Accordingly, the Complaint, taken as true, asserts a factual basis for the award of reasonable attorneys' fees.

36. In calculating the amount in controversy for purposes of CAFA jurisdiction, courts have considered attorneys' fees of 30% and above of the damages that the class may recover. See *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (a court calculating the amount in controversy for CAFA removal purposes "must also consider attorney's fees" and observing that "[f]ees could be as much as thirty percent of the judgment"); *Zellner-Dion v. Wilmington Fin., Inc.*, No. 10-CV-2587 (PJS/JSM), 2012 U.S. Dist. LEXIS 99986, at *8-9 (D. Minn. July 19, 2012) (contemplating attorney's fees of 33%); *DiPonzio v. Bank of Am. Corp.*, No. 11-CV-06192, 2011 U.S. Dist. LEXIS 74158, at *7-8 (N.D.N.Y. July 11, 2011) ("Attorneys' fees of 33% of damages are consistent with the norms of class litigation in the Second Circuit" and estimating attorneys' fees of that percentage "for the limited purpose of determining the amount in controversy").

37. In putative class actions involving insurance claims, this Court has concluded that attorneys' fees of 40% of the total potential recovery are properly included in the amount-

in-controversy calculation under CAFA. *Basham*, 2013 WL 5755684, at *7; *Knowles*, 2013 WL 3968490, at *6; *Thatcher*, 2012 WL 1933079, *6 (W.D. Ark. May 29, 2012); *Knowles v. Standard Fire Ins. Co.*, No. 4:11-CV-04044, 2011 WL 6013024, at *3 (W.D. Ark. Dec. 2, 2011).

38.  As stated above, for purposes of the amount in controversy, the Complaint asserts actual damages for violations of the ADTPA totaling some $457,202.52. Punitive damages in the range of 7.2 to 10 times this amount of compensatory damages brings the amount in controversy to between $3,749,060.66 and $5,029,227.72. In this case, therefore, a potential attorneys' fee award, calculated at the rate of 33%, would add a further $1,255,935.32 (0.33 x $3,749,060.66) to $1,684,791.86 (0.33 x $5,029,227.72) to the amount in controversy.

### 4.  The Total Amount in Controversy

39.  Based on the above factors, the amount in controversy in this action exceeds $5,000,000. Specifically, the amount in controversy in this action is at least $5,004,995.99 comprised of: (i) damages, restitution, and/or disgorgement in the amount of $457,202.52; (ii) punitive damages in the amount of $3,291,858.14; and (iii) attorneys' fees in the amount of $1,255,935.32. Thus, the fourth and final requirement of CAFA is satisfied and removal is proper.

### E.  None of the Exceptions to CAFA Jurisdiction Apply

40.  Twinings is not a citizen of Arkansas, the state in which the action was filed. Accordingly, 28 U.S.C. §§ 1332(d)(3) and (d)(4) do not apply.

41.  Twinings is not a State, State official or other governmental entity against which this Court may be foreclosed from ordering relief. Accordingly, Section 1332(d)(5)(A) does not apply.

2618699.1

42. Section 1332(d)(5)(B) does not apply because the number of members of all proposed plaintiff classes in the aggregate exceeds 100, as set forth above.

43. Section 1332(d)(9) does not apply because Plaintiff's claims do not involve securities or the internal affairs or governance of a corporation or other form of business enterprise.

44. Accordingly, because none of the exceptions to CAFA jurisdiction applies, this Court has original jurisdiction under CAFA.

## REMOVAL PROCEDURE

45. Twinings has not previously moved to remove this action.

46. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on Twinings in the state court action are attached as Exhibit A hereto.

47. Pursuant to 28 U.S.C. § 1446(d), Twinings will serve on Plaintiff's counsel of record and will file with the Clerk of the Circuit Court of Washington County, Arkansas, written notice of this request for removal, attaching a copy of this Notice of Removal.

## NO PREJUDICE OR WAIVER OF DEFENSES

48. By filing this Notice of Removal, Twinings expressly preserves and does not waive any defenses that may be available to it. Moreover, by seeking to prove that the amount in controversy is greater than the jurisdictional amount, Twinings does not concede that the jurisdictional amount is recoverable. Rather, Twinings denies that any amount is recoverable by Plaintiff or the putative class.

WHEREFORE, Defendants respectfully submit that this action is duly removed to this Court, and hereby provide notice of removal.

2618699.1

Respectfully submitted,

Kevin A. Crass (84029)
R. Christopher Lawson (93083)
FRIDAY, ELEDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
(501) 370-1592 Phone
(501) 244-5370 Fax
crass@fridayfirm.com
lawson@fridayfirm.com

*Attorneys for Defendant,*
*Twinings North America, Inc.*

By: _____/s/ Kevin A. Crass_____
KEVIN A. CRASS

## CERTIFICATE OF SERVICE

I, Kevin A. Crass, do hereby certify that a copy of the foregoing was served upon the following counsel of record, *via* regular United States Mail, this 7th day of July, 2014:

Mr. Kenneth R. Shemin
Shemin Law Firm, PLLC
3333 Pinnacle Hills Parkway, Ste. 603
Rogers, AR 72758

Mr. Thomas P. Thrash
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201

_____/s/ Kevin A. Crass_____
KEVIN A. CRASS

2618699.1