IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JENNY CRAIG, individually and on
behalf of all others similarly situated                                    PLAINTIFF

V.                                   CASE NO. 5:14-CV-05214

TWININGS NORTH AMERICA, INC.                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Twinings North America, Inc's ("Twinings") Motion to Dismiss, or Alternatively to Strike the Class Allegations (Doc. 19), and brief in support (Doc. 19-1); Plaintiff Jenny Craig's Response in Opposition (Doc. 26); and Twinings' Reply (Doc. 27).  For the reasons set forth herein, Twinings' Motion to Dismiss (Doc. 19) is **GRANTED**.

## I.  BACKGROUND

Craig brings this putative class action on behalf of Arkansas consumers pursuant to the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, and other state law causes of action, regarding allegedly deceptive and misleading labels on Twinings' tea products.

On May 22, 2014, Craig filed this action in the Circuit Court of Washington County, Arkansas.  Twinings removed the matter to this Court on July 7, 2014, pursuant to diversity jurisdiction.  Craig subsequently amended her Complaint on July 30, 2014.  The allegations in the Complaint stem from a "natural source of antioxidants" label used in marketing and advertising Twinings' teas.  Craig alleges that Twinings has labeled its teas deceptively

because the "teas do not meet the minimum nutrient level threshold to make such a claim which is 10% or more of the Reference Daily Intake ('RDI') or the Daily Reference Value ('DRV') of a nutrient with a recognized RDI per reference amount customarily consumed." (Doc. 16, p. 4).  Craig contends that Twinings mislabeled its tea as a "natural source of antioxidants" in order to charge a premium for the products.  According to Craig, tea that has been labeled this way cannot be legally sold or possessed, and misbranded food has no economic value.  She further contends that had she known that the misbranded teas were illegal to sell or possess, she would not have purchased the teas.

Craig alleges five claims, which are entirely based upon violations of the Arkansas Food, Drug, and Cosmetic Act ("AFDCA"), Ark. Code Ann. § 20-56-201, *et seq*.: (1) violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101, *et seq.*; (2) unjust enrichment; (3) breach of implied warranty of merchantability; (4) breach of express warranty; and (5) negligence.

On September 15, 2014, Twinings filed this Motion requesting that the Court dismiss the matter due to Craig's lack of standing to pursue both her individual claims and claims for products she never purchased; express preemption by the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"); failure to make claims that are facially plausible[1] and to plead fraud with the requisite particularity pursuant to Rule 9(b); and failure to state a claim for relief pursuant to Rule 12(b)(6).  In the alternative, Twinings

---

[1]Twinings argues that Craig's alleged reliance on "technical" violations of Food and Drug Administration regulations is implausible on its face. Because Craig does not state a claim under Arkansas law as discussed *infra* III.B. and III.C., the Court will not address whether the Complaint meets the plausibility requirement.

requests that this Court strike the class action allegations for lack of an objectively ascertainable class.

In response, Craig alleges that she has standing because she has stated an economic injury-in-fact, as she alleges actual damages sufficient to state a claim under the ADTPA, and has standing to seek recovery for products similar to those she actually purchased. Craig also argues that she may bring suit to enforce state law food-labeling requirements that are identical to those of the FDCA. In addition, Craig contends that her Complaint complies with Rule 9(b) and that she has properly pled claims under Arkansas law. Finally, Craig argues that Twinings' alternate request to strike the class allegation should be denied.[2]

In its Reply, Twinings argues that because Arkansas has not expressly or implicitly adopted any reference to the federal nutrition-labeling requirements, Craig's claims are completely preempted by federal law. Twinings further argues that tea products are exempt from nutrition labeling requirements, and also that the challenged statement is not a nutrient-content claim.

The Court addresses each claim in Twinings' Motion in turn.

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must present "a short and plain statement of the claim that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The intention of this is to "give the defendant fair notice of what the . . .

---

[2]Because the Court finds that none of Craig's individual claims survive dismissal, Twinings' alternate request to strike class allegations and argument that she lacks standing to pursue claims for substantially similar products are moot and will not be discussed further.

claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Even so, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*  In short, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings. Fed. R. Civ. P. 12(d).  However, the Court may consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) by pleading with particularity the circumstances surrounding the fraud or mistake.  Rule 9(b) applies to the state claims at issue here as they involve allegations that consumers were misled.  Rule 9(b)'s pleading standard applies with equal force to state consumer fraud statutes as to common law fraud claims. *In re Gen. Motors Corp. Anti–Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525,

1536 (E.D. Mo. 1997), *aff'd*, *Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999); *Pruitt v. Sw. Energy Co.*, 2013 WL 588998, at *5 (E.D. Ark. Feb. 13, 2013); *Whatley v. Recontrust Co. NA*, 2010 WL 4916372, at *6 (E.D. Ark. Nov. 23, 2010).  This pleading standard "demands a higher degree of notice than that required for other claims.  The claim must identify who, what, where, when, and how." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

### III.  DISCUSSION

### A. Article III Standing

Twinings first asserts that this action should be dismissed because Craig is without Article III standing to bring her suit.  In response, Craig argues that she sustained an economic injury because she would not have paid a premium for the tea had she not been misled by Twinings "unlawful labeling practices." (Doc. 26, p. 5).

Federal courts are courts of limited jurisdiction, adjudicating only cases authorized by the Constitution and Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  An Article III federal court must ask whether a plaintiff has suffered an injury that satisfies the "case or controversy" requirement of Article III of the U.S. Constitution.  To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).

5

Plaintiffs have standing when their economic interests are directly affected. *Friends of the Earth, Inc.*, 528 U.S. at 184. *See also Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) (finding that consumers who complained that they paid a premium price for deceptively marketed kosher products stated a concrete and not speculative injury) (internal citations omitted); *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty.*, 115 F.3d 1372, 1379 (8th Cir. 1997) (concluding even "indirect" financial harm "constitutes an injury in fact").

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject-matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). If a court determines that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject-matter jurisdiction. *Kokkonen*, 511 U.S. at 377.

Here, Twinings argues that Craig's claimed injuries arise from her allegation that Twinings' products are "legally worthless," which Twinings contends is too speculative to be an injury-in-fact. Twinings points out that Craig paid for tea which was not tainted, spoiled, adulterated, or contaminated, and she consumed it without incident or physical injury. However, Craig argues that her claim is not based upon harm caused by consuming the teas, but upon Twinings' unlawful claim on its product label, which misled Craig into buying Twinings' tea that she otherwise would not have purchased at a premium.

Twinings relies on *Frye v. L'Oreal USA, Inc.*, in which the district court for the Northern District of Illinois found that the presence of lead in lipstick was inadequate to

6

show an injury-in-fact to a consumer when its presence had no observable economic consequence. 583 F. Supp. 2d 954, 958 (N.D. Ill. Oct. 28, 2008). Here, Craig does not allege an economic consequence as a result of Twinings' mislabeling. Instead, she claims she would not have purchased the product, or that she would have purchased a cheaper product, had she known the "true contents" of the product. Twinings also relies on *In re Fruit Juice Products Marketing and Sales Practices Litigation*, a Massachusetts district court case, for the premise that an economic injury fails to state an injury-in-fact where no physical injury follows. The plaintiffs in *In re Fruit Juice* paid for juice that was found to contain trace amounts of lead, but they consumed the juice without suffering harm. 831 F. Supp. 2d 507, 512 (D. Mass. Dec. 21, 2011). Craig's claim of injury in the instant case is distinguishable in that her assertion that she would not have suffered economic injury but for the alleged unlawful labeling is sufficient to establish an economic injury-in-fact in the Eighth Circuit. *See Wallace,* 747 F.3d at 1029.

Therefore, Craig has satisfied the threshold for Article III standing. The Court will now address the merits of Craig's state law causes of action.

### B. Craig's Claims are Preempted

Twinings submits that Craig's Complaint is preempted by the FDCA as amended by the Nutrition Labeling and Education Act ("NLEA"). Craig counters that she is not suing under the FDCA but rather under Arkansas state law and specifically the AFDCA, which Craig contends is identical to the food labeling regulations of the Food and Drug Administration ("FDA"). In support of this contention, she points out that section 20-56-

209(7) of the Arkansas Code provides that any food is misbranded if it falls short of standards prescribed by the FDCA.

The Supreme Court has long recognized that state laws that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (internal citation omitted). That is, Congress has the power to preempt state laws. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982). Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *See generally In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F. 3d 781, 791-94 (8th Cir. 2010). In the instant case, only express preemption is at issue as that is the only preemption argument Twinings makes.

Preemption is express where Congress has "explicitly stated [its intent] in the statute's language . . . ." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted). Thus, "[t]he critical question in any pre-emption analysis is whether Congress intended that federal regulation supersede state law." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 369 (1986). Moreover, in the context of state laws dealing with matters traditionally within the historic police powers of the States, congressional intent to preempt such laws must be "clear and manifest." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted). Federal regulations adopted according to statutory authority may preempt state law just as completely as

federal statutes. *Fid. Fed. Sav. & Loan Ass'n*, 458 U.S. at 153 ("Federal regulations have no less pre-emptive effect than federal statutes.").

The FDCA grants the FDA the responsibility to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2). There is no private right of action under the FDCA. 21 U.S.C. § 337(a). In 1990 Congress passed the NLEA, amending the FDCA, to specifically address labeling requirements for certain food and beverage products. Pub. L. No. 101–535, 104 Stat. 2353 (1990). The NLEA is codified as part of the FDCA. The NLEA provides for national uniform nutrition labeling and expressly preempts state law that is inconsistent with its requirements. 21 U.S.C. § 343–1(a).

Twinings argues that Craig is making an end-run around the private action bar by indirectly bringing a claim to obtain redress for an alleged violation of the FDA labeling regulations. While the NLEA expressly preempts state labeling laws that cover certain described foods, 21 U.S.C. § 343–1, it does not preempt requirements imposed by state law that effectively parallel the NLEA. *See, e.g., N. Y. State Rest. Ass'n*, 556 F.3d 114, 123 (2nd Cir. 2009); *In re Simply Orange Juice Mktg. & Sales Practices Litig.*, 2013 WL 781785, at *3 (W.D. Mo. Mar. 1, 2013)*; Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010). The purpose of the NLEA is not to preclude all state regulation of nutritional labeling, but to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients. *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *9 (N.D. Cal. May 26, 2011); Pub. L. No. 101–535, 104 Stat. 2353, 2364 (1990).

9

Thus, the preemption issue here is whether the label violations on which Craig bases her claim impose a requirement pursuant to state law that differs from the FDCA. Craig's claims are based on the AFDCA, which impliedly adopts the federal provisions as its own. *See e.g.* Ark. Code Ann. 20-56-209(7) (declaring food to be "misbranded" if it falls short of standards prescribed by the FDCA).  Craig contends that any labeling violation of the AFDCA is also a violation of the ADTPA and drives her remaining state law claims.

Under 21 U.S.C. § 343(a)(1), food is misbranded if "its labeling is false or misleading in any particular."  There are two statutory sections that impose more specific labeling requirements: sections 343(q) and (r). Section 343(q) regulates "nutrition information" that must be disclosed about certain nutrients in food products, such as, *inter alia*, the total number of calories and the number of grams of trans fat.  Section 343(r), on the other hand, governs all other statements about nutrient content; specifically, claims that "expressly or by implication," "characterize[ ] the level of any nutrient . . . ."

Craig appears to allege in her Complaint, although she does not cite to any regulation, that Twinings' products violate 21 C.F.R. § 101.54(g), which covers "antioxidant" nutrient-content claims by describing the tea as a "source" of antioxidants.  In particular, Craig contends the teas are mislabeled because Twinings failed to meet the minimum nutrient level threshold to make such a claim, which is 10% or more of the RDI or the DRV of a nutrient with a recognized RDI per reference amount customarily consumed in accordance with 21 C.F.R. § 101.54(g).  In response, Twinings argues that not only is tea exempt from federal nutrition labeling requirements, but the challenged statement regarding teas being a "source" of antioxidants is not a nutrient-content claim because it does not purport to characterize the level of antioxidants pursuant to section 101.54.

10

"A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation." 21 C.F.R. § 101.13(b). Section 101.54 establishes a set of requirements for labels making "[a] nutrient content claim that characterizes the *level* of antioxidant nutrients present in a food." *Id.* (emphasis added). Under section 101.54(g), a nutrient-content claim that characterizes the level of antioxidant nutrients present in a food may be used on the label or in the labeling of that food when: (1) an RDI has been established for each of the nutrients; (2) the nutrients that are the subject of the claim have recognized antioxidant activity; (3) the level of each nutrient that is the subject of the claim is sufficient to qualify for the type of claim made; and (4) the names of the nutrients that are the subject of the claim are included as part of the claim. The labels attached to the Complaint attest that the tea is a "natural source of antioxidants," but does not characterize the level of the antioxidants, and thus are not nutrient-content claims as defined in section 101.54. This regulation is relevant to claims with a specific qualifier, such as "good," "more," and "high." "Natural," unlike the terms listed in the regulation, does not modify the word "source" to indicate the level of the ingredient.

Although Craig submits that describing tea as a "source of" antioxidants constitutes a nutrient-content claim, the generic phrase "natural source of antioxidants" does not appear to be either an express or implied nutrient-content claim. Express claims are those that make a "direct statement about the level (or range) of a nutrient in the food, *e.g.*, 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). Implied nutrient-content claims are those that describe a food or an ingredient in a manner that suggests that a

11

nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an *explicit* claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat"). 21 C.F.R. § 101.13(b)(2) (emphasis added). The challenged statement does not fall under either category, as it does not make an explicit claim or statement regarding antioxidants.

Further, tea and coffee are exempt from certain labeling requirements if they "contain insignificant amounts of all of the nutrients and food components required to be included in the declaration of nutrition information under paragraph (c) of this section, Provided, That the food bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising . . . ." 21 C.F.R. § 101.9(j)(4).  When the Court turns to paragraph "c," of section 101.9, antioxidants are not listed in the nutrients required to be on the label.

Craig cites to  21 C.F.R. § 101.65(c)(3) for the premise that "claims that products contain or are made with an ingredient that is known to contain a particular nutrient can only be made if the products are a 'good source' of the nutrient." (Doc. 26, p. 13, n.4). However, Craig's analysis omits relevant sections of the regulation, which states "[c]laims may be made that a food contains or is made with an ingredient that is known to contain a particular nutrient, or is prepared in a way that affects the content of a particular nutrient in the food, if the finished food is either 'low' in or a 'good source' of the nutrient that is associated with the ingredient or type of preparation.  If a more specific level is claimed (*e.g.*, 'high in ___'), that level of the nutrient must be present in the food . . . ." 21 C.F.R. § 101.65(c)(3).   The implication here is that if the label makes a specific claim

characterizing the content of the nutrient, such as "high in," that level must be present in the food.  However, this provision does not suggest that a certain level is required when a food item does not characterize a specific amount of an ingredient.

Craig cites to a March 24, 2011 warning letter issued to non-party Jonathan Sprouts, Inc., where  the FDA advised that certain claims using the word "source" were nutrient-content claims. The FDA cautioned that by using the term "source," Jonathan Sprouts "characterize[d] the level of nutrients of a type required to be in nutrition labeling" and are subject to FDA regulations. The warning further stated that because the FDA had not defined the word "source" by regulation, this characterization could not be used in a nutrient-content claim.

In weighing whether the FDA's warning letter issued to Jonathan Sprouts has any relevance to Craig's claim in the instant matter, the Court notes that Jonathan Sprouts apparently claimed that its sprouts "are one of our *finest* food sources of . . . saponin." (emphasis added).  "Finest" qualifies the term "source" and suggests a certain amount. This is distinguishable in that the "natural source" statement on Twinings' teas does not suggest an amount.  Moreover, warning letters "do not mark the consummation of FDA's decision making." *Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 944 (D.C. Cir. 2012); *see also Schering-Plough Healthcare Prod., Inc.*, 586 F.3d 500, 505 (7th Cir. 2009) ("The letters are not final agency action.").  The FDA Regulatory Procedures Manual describes FDA warning letters as giving "firms an opportunity to take voluntary and prompt corrective action *before* it initiates an enforcement action." *Id.* (citing FDA Manual, § 4–1–1 (emphasis added)).  The Manual states that the violations for which

13

warning letters are issued "*may* lead to enforcement action if not promptly and adequately corrected," not that they inevitably will. *Id.* (emphasis added).

The FDA Manual explains that a warning letter is "the agency's principal means of achieving prompt *voluntary* compliance with the Federal Food, Drug and Cosmetic Act." FDA Manual, § 4–1–1 (emphasis added).  Although a warning letter "communicates the agency's position on a matter," it is only "informal and advisory" and "does not commit FDA to taking enforcement action." *Id.*  The Manual provides that, "[d]espite the significance of the violations [for which a warning letter may be issued], there are some circumstances that may preclude the agency from taking any further enforcement action following the issuance of a Warning Letter." *Id.*  Thus, an FDA warning letter does not necessarily compel action by the recipient nor the agency, and does not represent a decision from which legal consequences would flow.

Craig's suit cannot continue as the very crux of her argument is that the term "natural source of antioxidants" is a misbranding of Twinings' teas, and is therefore illegal. Even if Twinings' labels contain nutrient-content claims, the product labels do not violate the FDA's labeling requirements because they do not characterize the level of antioxidants as required by section 101.54.  Because Craig's allegations do not violate the FDCA, any related state law claims arising from the same facts are preempted.  If allowed to proceed, the state law claims would impose liability inconsistent with the FDCA.

### C. Actual Damages under the ADTPA and the Remaining State Law Claims

Twinings contends that Craig fails to assert a private cause of action under the ADTPA because she has only alleged a claim for a mere diminution in value of the

14

purchased product. However, Craig argues that she bargained for teas that were represented as "natural sources" of antioxidants, but the teas failed to meet the minimum nutrient level threshold to make that claim.[3]  Craig contends that Twinings violated the ADTPA when it knowingly advertised and sold tea that was "mislabeled" as a "natural source of antioxidants."  Craig claims she reasonably relied upon certain representations made in connection with the amount of antioxidants contained in Twinings' tea products, and Craig now finds herself damaged due to having paid a premium for tea she otherwise would not have purchased.

When a person "suffers actual damage or injury as a result of an offense or violation" of the ADTPA, Ark. Code Ann. § 4–88–113(f), a cause of action for liability may be brought for any "unconscionable, false, or deceptive act or practice in business, commerce, or trade," Ark. Code Ann § 4–88–107(a)(10).  The Act prohibits a variety of listed practices, including "[k]nowingly making a false representation as to the . . . characteristics . . . of goods or services" and a catchall provision prohibiting "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4–88–107(a)(1), (a)(10).  The elements of such a cause of action are: (1) a deceptive consumer-oriented act or practice which is misleading in a material respect; and (2) injury resulting from such act. *See* Ark. Code Ann. § 4–88–113(f).  A private cause of action does not arise absent a showing of both a violation and resultant damages. *See Wallis v. Ford Motor Co.*, 362 Ark. 317 (2005).  For example, in *Wallis,* the plaintiff sued

---

[3]In her Complaint and Response, Craig periodically states the labels at issue claim that tea is an "excellent" source of antioxidants.  However, the Court's review of the labels reveals that no "excellent source" language appears.  All labels refer to tea being a "natural source" of antioxidants, which, as the Court explains in this Opinion, is a critical distinction.

under the ADTPA alleging that the manufacturer of a vehicle concealed a design defect, which led him to purchase the vehicle at a price in excess of its actual value. The plaintiff did not allege personal injury or property damage, nor did he claim that the vehicle malfunctioned. The Supreme Court of Arkansas held that "actual damage or injury [under the ADTPA] is sustained when the product has actually malfunctioned or the defect has manifested itself. Where the only injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA." *Wallis,* 363 Ark. at 328.

Turning to Craig's false representation claim, the Court observes that while Craig specifies that "natural source of antioxidants" is a false representation affirmatively made to her by Twinings, and she relied on this representation in making the decision to purchase the teas, Craig has not suffered actual damages as contemplated by the statute. Craig points to *M.S. Wholesale Plumbing, Inc. v. Univ. Sports Publications Co.,* for the proposition that paying for a product that was "not at all what defendant represented" alleged sufficient facts to satisfy the ADTPA's actual damage requirement. 2008 WL 90022, at *3-4 (E.D. Ark. Jan. 7, 2008). However, unlike the plaintiff in *M.S. Wholesale,* Craig's damages are based solely upon Twinings' alleged violation of the FDA's general nutrient content labeling regulations. In the instant case, Craig paid for tea and received tea. The Court cannot find, therefore, that this product was "not at all what defendant represented."

As to whether Craig was misled in a material respect by the labels, because Twinings' labels are supported by the FDA-approved labeling, the challenged statement is not false or misleading as a matter of law. Absent the pleading of false or misleading representations of material fact, Craig's claims based upon the ADTPA fail. *See DePriest*

16

*v. AstraZeneca Pharm.*, L.P., 2009 Ark. 547, 20 (2009) (affirming trial court's finding that because the pharmaceutical company's advertisements were in accordance with FDA labeling, they were not false or misleading as a matter of law).

To the extent that Craig's remaining state law claims rely on allegations that Twinings' tea did not comply with federal and state labeling requirements, they are preempted and therefore fail to state a claim under 12(b)(6).  Craig argues that the products at issue violate both express warranties and implied warranty of merchantability,[4] caused Twinings to be unjustly enriched, and revealed that Twinings was negligent because the products are illegal, misbranded, and economically worthless.  Since she seeks to enlarge the federal act, these claims are preempted.

## IV.  CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Twinings' Motion to Dismiss (Doc. 19) is **GRANTED**. All claims against Twinings are **DISMISSED WITH PREJUDICE**.

---

[4]Specifically, to recover for breach of implied warranty of merchantability, Craig must prove among other things that the product sold to her was not merchantable, *i.e.*, fit for the ordinary purpose for which such goods are used. *E.I. Du Pont de Nemours & Co. v. Dillaha*, 280 Ark. 477, 480 (1983).  The warranty of merchantability generally promises that "the goods will conform to the ordinary standards and are of average grade, quality, and value of like goods which are generally sold in the stream of commerce." *Rynders v. E.I. Du Pont De Nemours & Co.*, 21 F.3d 835, 841 (8th Cir. 1994) (internal citations omitted). Because Craig has not alleged that the products lack even the most basic degree of fitness for the ordinary use, such as consuming the tea as a beverage, her implied warranty claim fails.

**IT IS SO ORDERED** this _5th_ day of February, 2015.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE