# EXHIBIT 3

## DECLARATION OF F. EDWARD SCARBROUGH

I, F. Edward Scarbrough, declare and state:

1.      In 1971, I received my Ph.D. in Chemistry from Harvard University where my doctoral thesis was advanced under the direction of Nobel Laureate Professor William N. Lipscomb. In 1976, I began working for the Food and Drug Administration ("FDA") as a Chemist in the Division of Food and Color Additives. Working up the chain of command at the FDA, in 1990, I became the Director, Office of Food Labeling. As the Director, I was responsible for planning, organizing, staffing, coordinating, and managing all regulatory programs, research projects, and other activities related to the labeling of food within the United States. These responsibilities included directing the activities necessary to implement the Nutrition Labeling and Education Act of 1990, which required labeling on virtually all processed foods sold in the U.S. As part of that goal, the office that I directed created the "Nutrition Facts" label. Since 2008, I have been self-employed as a consultant with Scarbrough Consultants, LLC.

2.      Attached hereto as Exhibit A is my curriculum vitae, which includes a list of publications I have authored related to food labeling and other publications within the previous 10 years.

3.      For this case, I am being compensated at a rate of $250.00 per hour.

4.      In preparing this declaration, I have relied on my education and work history as well as the labels at issue.

5.      The Nutrition Labeling and Education Act of 1990 ("NLEA"), enacted on November 8, 1990, amended several sections of the Food, Drug and Cosmetic Act, including the misbranding requirements, stating that virtually all packaged foods sold in the United States

would be misbranded if the label did not contain nutrition labeling[1]. Equally important, the NLEA also stated that a food was misbranded if a claim was made on the label, or in labeling, that was not in accordance with regulations promulgated by FDA (through a delegation of authority by the Secretary of Health and Human Services).

http://www.fda.gov/ICECI/Inspections/InspectionGuides/ucm074948.htm#GUIDE%20F OR%20REVIEW%20OF%20NUTRITION

6.      As Director of the Office of Food Labeling, I was tasked by the Commissioner of Food and Drugs, Dr. David Kessler, to form an interdisciplinary team of approximately 30 individuals, drawn from units throughout FDA, to focus solely on developing the proposed and final regulations required by NLEA. On November 27, 1991, FDA issued more than 20 proposed regulations to implement NLEA, drafted by the team that I had formed and directed. In response to the proposed regulations, FDA received approximately 4000 comments from interested parties, including consumers, the food industry, academicians and foreign governments. The labeling team was then responsible for drafting final regulations that addressed all comments received, either by incorporating recommendations in the comment into the final regulations or explaining why the agency was not accepting that particular comment. On January 6, 1993, FDA issued the final regulations implementing the requirements of NLEA.

7.      The policies and practices of FDA are those of close and frequent communication with the food industry. For example, FDA encouraged meetings with the industry to explain appropriate interpretations of regulations and current agency thinking. In addition to regulations,

---

[1] The NLEA made exemptions for foods of insignificant nutritional value and for very small businesses, with a definition of small business, based on employees and units sold, contained within the law. However, any product with a nutrition-related label claim, regardless of nutritional value or size of the business, must provide nutrition labeling and the claim must be made in accordance with FDA regulations.

FDA periodically publishes guidance documents, which provide agency thinking on policies and regulations. FDA also issues warning letters to firms that have labels or labeling that the agency considers to be in violation of agency regulations. Warning letters are made public, posted on FDA's website. Guidance documents and warning letters represent FDA's interpretation of the regulation(s) and how the agency believes that the regulation(s) should be complied with. Therefore the food industry should be well aware of FDA regulations and policies.

8.      However, it is important to stress that because a product is on the market with a non-complying label does not mean that FDA has determined that the non-compliance is insignificant and can be accepted in the food supply. On the contrary, FDA has limited resources and a multitude of competing priorities. Within those limitations, situations which may bring immediate physical harm to consumers must be addressed immediately; whereas with issues such as nutrition claims, the consequences to public health could be just as, or more, important, but the effects are more long-term.

9.      I have been asked to comment on the claim "*Natural Source of Antioxidants*" that appears on the label of a number of Twinings' products (e.g. Twinings Green Tea). It is my opinion that this claim causes the food to be misbranded in a number of ways. As discussed more fully below, I believe that: (1) The term "*source*" characterizes the level of a nutrient in a food and must be provided for in FDA regulations, which it is not; (2) The use of the term "antioxidants" without specifying the antioxidants being referenced violates FDA regulations and policy; and (3) The antioxidants found in green tea do not have a RDI (Reference Daily Intake) and therefore cannot be the subject of a claim that characterizes the level of a nutrient. I base this opinion on my work experience at FDA as well as FDA regulations, guidance and warning letters.

10.    On November 27, 1991, FDA proposed regulations implementing the requirements of the NLEA.  Section 403(q)(5)(C) of the NLEA exempted foods that contain insignificant amounts of nutrients from the nutrition labeling requirements.  For example, this exemption would apply to certain single ingredient foods, such as coffee, that contain less than 2% per serving of any nutrient required to be listed in the "Nutrition Facts" panel.  However, the act explicitly states that the exemption applies only "if the label, labeling or advertising of such food does not make any claim with respect to the nutritional value of such food."   In the preamble to the proposed regulations, FDA reiterated this provision of the NLEA, stating that the exemption is available "only when there are no nutrition claims in the label, labeling or advertising for the food."[2]  The claim *Natural Source of Antioxidants* is a nutrition claim on the label of the Twinings' products at issue in this case.  Accordingly, these products are subject to FDA's nutrition labeling requirements.  Further, all nutrition claims on foods regulated by FDA are subject to the nutrition claims regulations, regardless of nutrition insignificance or size of business.

11.    In implementing the NLEA, FDA proposed that to be considered a "source" of a nutrient a food must contain 10 to 19 percent of the RDI for that nutrient per serving and that "good source" was a synonym for "source".[3]  Therefore, in my opinion, FDA clearly considered, and still considers, that the term "source" characterizes the level of a nutrient in a food.  In response to the proposals, the agency received a number of comments that contended that FDA should not define "source" because consumers cannot reasonably be expected to distinguish between foods that are "high" in a nutrient (20% or greater of the RDI per serving) as opposed to foods that are a "source" of a nutrient (10 to 19% of the RDI per serving).  Comments also

---

[2] Page 60376,  Federal Register I Vol. 56 No. 229 / Wednesday, November 27 1991 I Proposed Rules
[3] Page 60471, Federal Register I Vol. 56 No. 229 / Wednesday, November 27 1991 I Proposed Rules

pointed out that FDA had proposed to allow claims such as "trivial source", negligible source" and "dietarily insignificant source" as synonyms for "free" and "low source of" as a synonym for "low" and that the use of the unmodified term "source" could be confusing to consumers. Therefore, the agency concluded that the use of the term "source" alone, although characterizing a level of a nutrient, did not allow consumers to make conclusions about the level of that nutrient present in a serving.  In the final regulations, FDA retained the definition for "high" but replaced the term "source" with "good source".[4]  It is my opinion, based on my work experience, that in all of the discussions during the development of the proposed and final regulations, the term "source" was considered by FDA to characterize the level of a nutrient in a food.  Further, because FDA did not define "source" in a regulation, as required by the NLEA, the use of the unmodified term is not permitted and such use causes a food to be misbranded. [In the case of Twinings, the use of the modifier "natural" is, in my opinion, little more than marketing puffery and does not change my conclusions about the term "source".]

12.     The use of the term "antioxidants" in the label statement "Natural Source of Antioxidants" on the Twinings products violates FDA regulations.  Although antioxidant claims are allowed by FDA on food labels, they can only be made for antioxidant nutrients for which FDA has established a Reference Daily Intake (RDI).  This requirement is clearly stated in FDA regulation 21 CFR 101.54(g)(1).  Nutrients for which FDA has established a RDI are listed in 21 CFR 101.9.  FDA established this requirement because the agency considered it important for there to be a "yardstick" against which to measure the claim.  Otherwise, claims such as "source" could be made for products which provide physiologically insignificant amounts of the specified nutrient.  FDA has not established a RDI for antioxidants found in tea.  Therefore, any nutrient

---

[4] Federal Register / Vol. 58, No. 3 / Wednesday, January 6, 1993 / Rules and Regulations

content claim about antioxidants found in green tea on the labels of these foods causes the products to be misbranded and, therefore, illegal.

13.    The label statement "Natural Source of Antioxidants" further causes the food to be misbranded because the label fails to identify the antioxidant(s) being referred to, as required by FDA regulation 21 C.F.R. § 101.54(g). The requirements for making antioxidant claims are also addressed in FDA guidance published in 2008: Guidance for Industry: Food Labeling; Nutrient Content Claims; Definition for "High Potency" and Definition for "Antioxidant" for Use in Nutrient Content Claims for Dietary Supplements and Conventional Foods; Small Entity Compliance Guide.[5]  FDA has also issued numerous warning letters directly addressing products similar to the Twinings' products that make claims similar to the claims being made on the Twinings labels. For example, in February 2010, FDA issued a warning letter to Fleminger Inc., Doing Business as Dr. Lee's TeaForHealth™ for TeaForHealth™ green tea products: Dr. Lee's TeaForHealth® 710EGCG™ inabottle™ Green Tea and Tea For Health® 710EGCG™ Ready-To-Drink Natural Brewed Green Tea, stating that the claim "Drink high antioxidant green tea -- for your health!" was an unauthorized nutrient content claim.[6]  At the same time, FDA issued a warning letter to Redco Foods, Inc. regarding their Salada Naturally Decaffeinated Green Tea, stating that nutrient content claims using the term "antioxidant" must also comply with FDA regulations.[7]   In August 2010, FDA issued a warning letter to Unilever, Inc. regarding antioxidant claims on that company's product "Lipton Green Tea", which stated that "Lipton Tea is made from tea leaves rich in naturally protective antioxidants.".[8]   Similarly, on April 20, 2011, FDA issued a warning letter to Diaspora Tea & Herb Co. LLC regarding antioxidant

---

[5]http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm 063064.htm
[6] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm202823.htm
[7] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm202832.htm
[8] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm224509.htm

claims on White Tea, Yerba Maté Shade Grown, Organic Yerba Maté, Blueberry Rooibos, Organic Fair Trade Rooibos Blend, Green Rooibos (Green Bush), Organic Fair Trade Botanical, Matcha, 100% Premium Tea Powder, Genmai Green Tea, 100% Premium Tealeaf Powder, and Green Oolong Tea, 100% Premium Tealeaf Powder.[9]  The Diaspora products contained a variety of antioxidant claims.  In my opinion, the Twinings Company should be aware of, and heed the advice contained within, these FDA warning letters, as well as the requirements in FDA regulations.

14.     In reaching my opinion, I relied on my education and experience at the FDA as well as the FDA labeling regulations, guidance and warning letters

I declare under oath that the foregoing is true and correct.  This declaration was executed on March 4, 2015.

F. Edward Scarbrough

---

[9] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm252215.htm

Exhibit A

**F. EDWARD SCARBROUGH**          11 Tattershall Court, Germantown MD 20874
Telephone: (301) 916-9668                          E-mail: Scarbrough.ed @gmail.com

## EDUCATION

**Ph.D. in Chemistry, Harvard University, 1971** (Doctoral thesis in
                    Physical Chemistry under the direction of Nobel Laureate Professor
                    William N. Lipscomb)
**Masters of Arts, Chemistry, Harvard University 1966**
**B.S. in Chemistry, University of Tennessee, 1964**

## EMPLOYMENT HISTORY
### Self-employed (2008 – present)

- **Scarbrough Consultants, LLC** – consulting on food regulatory policy, food safety and international harmonization.
  - Example: 2009 USDA contract to conduct food safety workshops in Ghana, Ethiopia, and Kenya
  - 2010 Cochran Fellowship Program two-week course on food labeling for food regulators from Thailand
  - Member, IFT Task Force on Global Policy and Regulations
  - Member, Food Industry Codex Coalition
- Volunteer work – example: member, Library Advisory Committee for Montgomery County Maryland

### U.S. Department of Agriculture

- **U.S. Manager for Codex** (1997 – 2007) Coordinated all United States participation in activities of the Codex Alimentarius.  This involved:
  - Serving as Codex Contact Point for the United States, which included distributing all documents received from Codex Alimentarius, creating and maintaining a US Codex web site, and creating and maintaining a reference library.
  - Appointing U.S. Delegates to Codex Committees and providing logistical support to U.S. Delegations.
  - Ensuring stakeholder participation in Codex activities by holding public meetings and circulating Codex documents and U.S. positions for comment.
  - Coordinating the development of, and often drafting, U.S. positions on Codex isssues, ensuring that all stakeholders and government agencies had an opportunity for input and ensuring consistency among U.S. positions to various Codex Committees.
  - Conducting training for U.S. Delegates in effective negoiation skills and cross-cultural interactions.
  - Conducting both domestic and international outreach efforts, which involved making presentations on Codex, the national and international organization of Codex activities and on controversial issuees in Codex.
  - Organizing and conducting international workshops on Codex, including several in Latin America, Asia, and Africa, as well as workshops for individual counntries such as India and China.

### Food and Drug Administration

**Director, Office of Food Labeling** (1990 -1997) Responsible for planning, organizing, staffing, coordinating, and managing all regulatory programs, research projects, and other activities related to the labeling of food within the United States.  This included:
  - Directing the activities necessary to implement the Nutrition Labeling and Education Act of 1990, which required nutrition labeling on all processed foods sold in the U.S.; created the NUTRITION FACTS label.
  - Managing the scientific research to develop analytical methodologies to enforce accurate nutrient values on food labels.

- - o Directing consumer research on understanding and use of the food label, on dietary practices and on knowledge of the relationship of diet aand health.
    - o Served as U.S. Delegate to the Cpdex Committee for Food Labelling
  - **Director (1988 - 1990)/ Deputy Director (1987 - 1988), Office of Nutrition and Food Sciences** (Directed the Divisions of Nutrition, Microbiology, and Consumer Sciences)
    - o Served as U.S. Delegate to the Codex Committee for Nutrition and Foods for Special Dietary Uses
  - **Chief, Regulatory Affairs Staff, Office and Food Sciences** (1980 – 1987) (Developed regulations on sodium and cholesterol labeling, infant formula composition and good manufacturing practices, dietary supplements, nutrient bioavailability, food standards, etc)
  - **Supervisory Chemist / Chemist, Division of Food and Color Additives** (1976 – 1980) Developed principles and procedures for the re-evaluation of the safety of substances added to foods, managed the review of industry submitted petitions for the approval of new food additives)

## Academia

- **Chemistry Instructor, University of Pennsylvania** (1973-1977) (Taught chemistry to a wide variety of Penn students)
- **Researcher (Post-doctoral Fellow), University of Bern, Bern Switzerland** (1971 – 1973) (Established an organic crystallography section, including numerous computer programs)

# AREAS OF EXPERTISE

## Management

- Created, staffed and supervised the U.S. Codex Office, responsible for directing all U.S. participation in the Codex Alimentarius Commission, including coordinating governmental inter-agency and non-governmental stakeholders activities
- Spearheaded FDA's major food label reform initiative, by directing a multi-disciplinary team, resulting in nutrition labeling on virtually all processed packaged foods in the United States
- Directed FDA's regulatory programs for infant formula and dietary supplements, including labeling and good manufacturing practices
- Managed FDA's food-related surveillance and epidemiology programs, including post-market surveillance of adverse reactions to foods, human diet and health assessments, and surveys of consumer and marketplace behavior

## Communication

- Delivered over 150 invited presentations, including major U.S. Codex and FDA policy statements in national and international meetings (Presentation list available on request)
- Served as U.S. Government spokesperson for Codex and FDA issues, in both electronic broadcast and print media
- Testified before Congress on several occasions
- Briefed Cabinet Secretaries and Ambassadors on major policy issues
- Developed regulations nutrition labeling, infant formula content and quality control, dietary supplements, nutrient bioavailability, food standards, etc.
- Served as government spokesperson on regulatory and international policies to professional associations, academic meetings, trade associations and consumer groups
- Taught a variety of chemistry courses

## International Activities

- United States Delegate to:
  - o Codex Alimentarius Commission
  - o Executive Committee for the Codex Alimentarius Commission
  - o Codex Committee on General Principles
  - o Codex Committee on Food Labelling
  - o Codex Committee on Nutrition and Foods for Special Dietary Uses
  - o FAO/WHO Coordinating Committee for North America and the South-West Pacific

2

- Chairman of US/Canada Mexico NAFTA Technical Working Group on Food Labelling, Packaging and Standards
- Conducted U.S. Codex outreach activities in Latin American, the Caribbean, Africa, and Asia
- Member of U.S. Delegation to FAO/WHO International Conference on Nutrition (ICN)
- WHO consultant to the Ministry of Health, Malaysia, to help establish a food labeling program

**Research and Reporting**
- Major research projects in inorganic, organic and protein chemistry
- Published over 50 papers, covering subjects such as physical chemistry, crystallography, nutrition, food science, public health policy, international food standards and international trade (Publication list attached)
- Project Officer for several contracts with the National Academy of Sciences
- Principal investigator , NIH grant to crystallographically determine the structure of the enzyme, inorganic pyrophosphatase

**Executive Liaison**
- Member of  USDA Biotechnology Policy Committee
- FDA representative to the Dietary Guidance Committee of the Nutrition Policy Board
- FDA liaison member of the Coordinating Committee for the National Cholesterol Education Program
- Member of FDA Task Force on Medical Foods and FDA Task Force on Health Messages on Food Labels

## PROFESSIONAL RECOGNITION
- US Department of Agriculture Presidential Award
- Secretary of Health and Human Services' Superior Service Award
- Seven  Food and Drug Administration Awards, including the Award of Merit, Commissioner's Special Citation, and Commendable Service Awards
- Member, American Chemical Society, American Institute of Nutrition and Institute of Food Technologists

3

# PUBLICATIONS RELATED TO FOOD LABELING

## JOURNAL ARTICLES

Kessler, D.A., J. R. Mande,  F.E. Scarbrough, R. Schapiro and K. Feiden, 2003. Developing the 'Nutrition Facts' Food Label. Harvard Health Policy Review, 4(2): 13-24.

Scarbrough, F.E., 1997. Some Food and Drug Administration Perspectives on Fat and Fatty Acids. American Journal of Clinical Nutrition, 65:1578S-1580S.

Sehat, N., F.E. Scarbrough and G. Niedwetzki, 1997. Die neue Lebensmittel-kennzeichnuug im Rahmen des Lebensmittelrechts in den Vereinigten Staaten von Amerika (USA). Z Lebensn Unters Forsch A, 205:L1-L9.

Lewis C.J., A. Randell, and F.E. Scarbrough, 1996. Nutrition Labelling of Foods: Comparisons between US Regulations and Codex Guidelines. Food Control, 7: 285- 293.

Lineback, D., J. DeVries, J. Slavin, A. Stephen, D. Gordon, L. Prosky, F.E. Scarborough, S. Lee, B. Olson and F. Clydesdale, 1995. Complex carbohydrates: the science and the label. Nutrition Reviews 53, 186-193.

Scarbrough, F.E., 1991. Under the Reproposed Rule, How Much Scientific Evidence Does a Company Need to Justify Its Claim and What are the Food and Drug Administration's Interim Rules. Food, Drug, Cosmetic Law Journal, 45:647-653.

Scarbrough, F.E., 1989. A New Concept- Health Claims on Food Labels. Journal of the Association of Food and Drug Officials, 53(1):15-20.

## BOOK CHAPTERS

Scarbrough, F.E., 2012. Food Labeling. In: Modern Nutrition in Health and Disease, 11th Edition, (eds. Ross, A.C., M.E. Shils, B. Caballero, R.J. Cousins, K.L. Tucker and T.R. Ziegler), Lippincott Williams & Wilkins, Riverwoods IL pp 1492-1503.

Scarbrough, F.E., 1999. Complex Carbohydrates and the Food Label: An FDA Perspective. In: Complex Carbohydrates in Food, (ed. Cho, S.S., L. Prosky and M. Dreher), CRC Press, Boca Raton FL, pp 15-24.

Scarbrough, F.E., 1995. Perspectives on the Nutrition Labeling and Education Act. In: Nutrition Labeling Handbook, (ed. Shapiro, R.), Marcel-Decker, Inc., New York, pp 29-52.

Lineback, D., M. Dreher, J.W. Devries, J.L. Slavin, A. Stephen, D. Gordon, L. Prosky, F.E. Scarbrough, G. Henderson, S.S. Cho, B. Olson and F. Clydesdale, 1989. Complex Carbohydrates: The Science and the Label. In: Complex Carbohydrates in Food, (ed. Cho, S.S., L. Prosky and M. Dreher), CRC Press, Boca Raton FL, pp 39-53.

## TRADE PUBLICATIONS

Bender, M.M. and F.E. Scarbrough, 1995. Nutrition Labeling: FDA Policy on the Use of Databases. The World of Ingredients, January-February  1995: 54-56.

Scarbrough, F.E., 1992. Food labeling: The FDA Perspective. INFORM, International News on Fats, Oils and Related Materials, American Oil Chemists Society, Champaign IL, 3(8): 909-914.

## PROCEEDINGS

Scarbrough, F.E., 1995. FDA Perspective on Labeling. Proceedings of Symposium on Complex Carbohydrate Definition, International Life Sciences Institute, Washington DC.

Scarbrough, F.E., 1995. Nutrition Labeling of Dietary Supplements and Health Claims: Developments in the USA and Implications for the Health Supplements Market. Proceedings of Nutrition'95 Summit, Singapore. Institute for International Research.

Scarbrough, F.E. 1992. FDA Regulations Regarding "Lite" Confections. Proceedings of the 46th Annual Production Conference, Pennsylvania Manufacturing Confectioners' Association, Medford NJ, pp 89-94.

## ABSTRACTS

Scarbrough, F.E., 1998. Codex and the International Harmonization of Labeling. Abstracts, 1998 Institute of Food Technologists Annual Meeting, Atlanta, page 9.

Scarbrough, F.E., 1994.FDA Policies Regarding the Use of Nutrient Databases for Nutrition Labeling. Abstracts, 1994 Institute of Food Technologists Annual Meeting, Atlanta, page 116. 01075
Scarbrough, F.E., 1993. Nutrition Information on Food Labels. Abstracts, XV International Conference for Nutrition, Adelaide, Australia, page 233.

Scarbrough, F.E., 1992. Food Labeling Claims and Nutrition Education. Abstracts, 1992 Institute of Food Technologists Annual Meeting, New Orleans, page 37.

Scarbrough, F.E., 1991. Nutrition Labeling of Dietary Fats and Their Properties. Abstracts, 1991 PORIM International Palm Oil Conference, Palm Oil Research Institute of Malaysia, Kuala Lumpur, Malaysia, page 63.

Scarbrough, F.E., 1990. Legal and Regulatory Food Labeling Issues. 1990 American Association for the Advancement of Science Annual Meeting. Page 17.

Scarbrough, F.E., 1990. FDA Food Labeling Initiatives. Abstracts, 1990 Institute of Food Technologists Annual Meeting, Anaheim, page 142.

Scarbrough, F.E.,1988. Health Claims: What Constitutes Truthful and Not Misleading Messages? Abstracts, 1988 Institute of Food Technologists Annual Meeting, New Orleans, page 85.

Scarbrough, F.E.,1986. Health Claims Labeling: An FDA Perspective. Abstracts, The American Dietetic Association 69th Annual Meeting, Las Vegas, page 27.

## OTHER PUBLICATIONS (within the Past 10 Years)

Scarbrough, F.E., 2010. Codex – What's All the Fuss?. Food and Drug Law Journal, 65(4): 632-638.

Scarbrough, F.E., 2011, Codex Alimentarius Commission Approves New Work Projects, Food Technology (Online Exclusive): 65(9).

Scarbrough, F.E., 2004. Relevant Legislation in North America. Abstracts, 2004 Institute of Food Technologists Annual Meeting, Las Vegas, page 235.

Scarbrough, F.E., 2006. The Codex Alimentarius Commission and FDA. Abstracts, MARM 2006, American Chemical Society, Hershey, page 139.

**Exhibit B**

**F. EDWARD SCARBROUGH**                    11 Tattershall Court, Germantown MD 20874
Telephone: (301) 916-9668                              E-mail: Scarbrough.ed @gmail.com

## DEPOSITIONS

December 16, 2013: Deposition in the case of Tricia Ogden, individually and on behalf of all others similarly situated, Plaintiff v. Bumble Bee Foods, LLC, Defandant

February 20, 2014: Deposition in the case of Natalia Bruton, individually and on behalf of all others similarly situated, Plaintiff, v. GERBER PRODUCTS COMPANY, et al., Defendants.

January 7, 2015 Deposition in the case of Brenda Center, individually and on behalf of others similarly situated, Plaintiff, v. OCEAN SPRAY CRANBERRIES, INC. Defendant.