IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| JENNY CRAIG, individually and on behalf of all others similarly situated, | PLAINTIFF |
| v.   Case No. 5:14-cv-05214-TLB | |
| TWININGS NORTH AMERICA, INC., | DEFENDANT |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR RECONSIDERATION

Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(6), Plaintiff Jenny Craig ("Plaintiff") respectfully requests that the Court reconsider its Order dated February 5, 2015 (Dkt. #29), and amend, alter, and relieve Plaintiff from the subsequent Judgment entered February 5, 2015 (Dkt. #30).

I.  **Legal Standard**

Federal Rule 59 permits a party to move to alter or amend a judgment within 28 days of the ruling. Fed. R. Civ. P. 59(b), (e). "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is 'necessary to correct manifest errors of law or fact upon which the judgment is based;' 2) the moving party presents 'newly discovered or previously unavailable evidence;' 3) the motion is necessary to 'prevent manifest injustice;' or 4) there is an 'intervening change in controlling law.'" *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citations omitted). The Plaintiff premises her motion of grounds 1 and 3.

Should the Court determine that Rule 59(e) is inapplicable, Rule 60(b) provides alternate grounds for relief, in that it permits a party to seek relief from a judgment. Under Rule 60(b), the

1

Court may grant reconsideration of a final judgment in a variety of circumstances, including two that are applicable here: Namely, a showing of "mistake" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) and (6).

## II. The Court Should Reconsider Its Ruling that Plaintiff's "Natural Source" Claims Are Expressly Preempted

Under 21 C.F.R. § 101.54(g), a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may only be used on the label or in the labeling of that food when it meets various requirements, none of which have been met here. This Court held that Plaintiff's claim was expressly preempted, because "the generic phrase 'natural source of antioxidants' does not appear to be either an express or implied nutrient-content claim." Order at 11.

Defendant's brief in support of its Motion to Dismiss devoted just a single paragraph, with only four sentences of argument, to the proposition that the representations at issue are not nutrient content claims. *See* Mem. Supp. Def.'s Mot. Dismiss 15. Plaintiff's opposition responded in kind. *See* Pl.'s Resp. Opp'n Mot. Dismiss 13. In retrospect, it is clear that Plaintiff did not place sufficient importance on this issue. Plaintiff respectfully submits that a more thorough presentation of the issues and relevant authorities support Plaintiff's allegations that the label claim that a tea product is a "natural source of antioxidants" is, indeed, a nutrient-content claim.

### A. The Jonathan Sprouts Letter Suggests that Plaintiff's Claims Are Not Preempted

#### 1. FDA Warning Letters Are Persuasive Authority

In concluding that Plaintiff's claim was expressly preempted, this Court rejected the notion that it should defer to the Jonathan Sprouts FDA warning letter (Exhibit "1"), holding that

the letter "does not represent a decision from which legal consequences would flow." Order at 14. The FDA describes the use and effect of warning letters in its Regulatory Procedures Manual as follows:

> When it is consistent with the public protection responsibilities of the agency and depending on the nature of the violation, it is the Food and Drug Administration's (FDA's) practice to give individuals and firms an opportunity to take voluntary and prompt corrective action before it initiates an enforcement action. Warning Letters are issued to achieve voluntary compliance and to establish prior notice. (Prior notice is discussed in Chapter 10.) **The use of Warning Letters and the prior notice policy are based on the expectation that most individuals and firms will voluntarily comply with the law.**
>
> **The agency position is that Warning Letters are issued only for violations of regulatory significance. Significant violations are those violations that may lead to enforcement action if not promptly and adequately corrected. A Warning Letter is the agency's principal means of achieving prompt voluntary compliance with the Federal Food, Drug, and Cosmetic Act (the Act).**

Food and Drug Administration Regulatory Procedures Manual Sec. 4-1-1 (emphasis added) http://www.fda.gov/ICECI/ComplianceManuals/RegulatoryProceduresManual/ucm176870.htm

A federal agency's interpretation of its own regulation is "controlling" unless it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). "This broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). The decisions of the Eighth Circuit are in accord. *Culpepper v. Schafer*, 548 F.3d 1119, 1122 (8th Cir. 2008)("an agency's interpretation of its own regulation is "controlling unless 'plainly

3

erroneous or inconsistent with the regulation'" citing *Auer v. Robbins* and *Robertson v. Methow Valley Citizens Council*.

An agency's interpretation of its own regulations is entitled to deference even if informal and even if non-binding or lacking the force of law. *Pub. Lands for the People, Inc. v. United States Dep't of Agric.*, 2012 U.S. App. LEXIS 20175 (9th Cir. 2012). Thus, an FDA warning letter is entitled to deference despite the fact that it is not a formal or final agency action. In fact, the FDA makes clear that it intends for warning letters to be used as statements of the agency's "position on a matter." *See* FDA's July 2012 Regulatory Procedures Manual; *see also* http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm202734.htm (explaining that warning letters "clarify the FDA's expectations for food manufacturers as they review their current labeling").

Courts have recognized that FDA warning letters are expressions of agency policy and regulatory interpretation, and are therefore entitled to deference. This is consistent with the FDA's own position, as the administration has made it clear that it intends for warning letters to be used as statements of agency policy to provide guidance to the food industry. According to the FDA's July 2012 Regulatory Procedures Manual:

> The agency position is that Warning Letters are issued only for *violations of regulatory significance*. Significant violations are those violations that may lead to enforcement action if not promptly and adequately corrected. A Warning Letter is the agency's principal means of achieving prompt voluntary compliance with the Federal Food, Drug, and Cosmetic Act (the Act).
>
> *The Warning Letter was developed to correct violations of the statutes or regulations*. A Warning Letter is informal and advisory. *It communicates the agency's position on a matter*, but it does not commit FDA to taking enforcement action. For these reasons, FDA does not consider Warning Letters to be final agency action on which it can be sued. . . .
>
> The Warning Letter is the agency's principal means of *notifying regulated industry* of violations and achieving prompt voluntary correction.

4

Moreover, the FDA has specifically indicated that it has posted the warning letters to inform food manufacturers of their legal obligations. The FDA has stated that it intends that "the Warning Letters would clarify the FDA's expectations for food manufacturers as they review their current labeling." The FDA has indicated that its expectation is that companies that receive warning letters will correct their labels and that "[t]he agency also anticipates that *other firms* will examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary."

http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm202734.htm (emphasis added). Warning letters represent the FDA's interpretation of regulations and how the FDA believes compliance with those regulations should occur. Scarbrough Declaration (Exhibit "3") (Exhibit "3") ¶ 7.

Because FDA guidance and FDA warning letters are expressions of agency policy or regulatory interpretation, they are entitled to substantial deference. *See Auer,* 519 U.S. at 461; *Thomas Jefferson Univ.,* 512 U.S. at 512.

### 2. The Jonathan Sprouts FDA Warning Letter Supports Plaintiff's Argument Against Preemption.

The Court held that the Jonathan Sprouts FDA warning letter was inapplicable: it concluded that "Jonathan Sprouts apparently claimed that its sprouts 'are one of our *finest* food sources of . . . saponin," and that "this is distinguishable in that the 'natural source' statement on Twinings' teas does not suggest an amount." Order, p. 13.

But there were *two* "source" claims the FDA took issue with in its warning letter to Jonathan Sprouts: (1) a label claim ("Phytoestrogen Source") that lacked any modifier like "finest," "excellent" or "good;" and (2) a website claim ("finest food sources of . . . saponin")

5

that utilized the modifier "finest." *See Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 46822, at *7 n.6 (N.D. Cal. Jan. 6, 2014)("Jonathan Sprouts' label had the claim 'Phytoestrogen Source' and its website had the claim 'Alfalfa sprouts are one of our finest food sources of . . . saponin.'"). The relevant portion of the FDA warning letter provides:

> Your Organic Clover Sprouts product label bears the claim "Phytoestrogen Source[.]" Your webpage entitled "Sprouts, The Miracle Food! - Rich in Vitamins, Minerals and Phytochemicals" bears the claim "Alfalfa sprouts are one of our finest food sources of . . . saponin." These claims are nutrient content claims subject to section 403(r)(1)(A) of the Act because they characterize the level of nutrients of a type required to be in nutrition labeling (phytoestrogen and saponin) in your products by use of the term "source." Under section 403(r)(2)(A) of the Act, nutrient content claims may be made only if the characterization of the level made in the claim uses terms which are defined by regulation. However, FDA has not defined the characterization "source" by regulation. Therefore, this characterization may not be used in nutrient content claims.

As this portion of the letter makes plain, Jonathan Sprouts made an unlawful nutrient content claim by "characteriz[ing] the level of nutrients of a type required to be in nutrition labeling (phytoestrogen and saponin) in . . . products by use of the term 'source.'" *Id; see also Clancy v. Bromley Tea Co.*, 2013 U.S. Dist. LEXIS 112722, at *32-33 ("In a warning letter to Jonathan Sprouts, Inc., the FDA explained that claims using the word 'source' were nutrient content claims.") Significantly, at least two federal district court decisions discussing this same warning letter have focused only on the "phytoestrogen source" claim. *See Gustavson v. Mars, Inc.*, 2014 U.S. Dist. LEXIS 80139, at *15 n.2 (N.D. Cal. June 10, 2014) ("Specifically, the Sprouts Letter stated: 'Your Organic Clover Sprouts product label bears the claim 'Phytoestrogen Source[.]' ... These claims are nutrient content claims subject to [21 U.S.C. § 343(r)(1)(A)] because they characterize the level of nutrients of a type required to be in nutrition labeling . . . by use of the

6

term 'source.'") (emphasis in original)); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1121 (N.D. Cal. 2013) (same).[1]

In the parties' scant briefing on this subject with regard to Twinings' Motion to Dismiss, it was not made sufficiently clear that, in the Sprouts warning letter, the FDA determined that the "source" claim *without* a modifier, as well as the source claim with a modifier ("finest"), were *both* "nutrient content claims . . . because they characterize the level of nutrients of a type required to be in nutrition labeling (phytoestrogen and saponin) in . . . products by use of the term source." Sprouts FDA Warning Letter.

The Jonathan Sprouts letter supports Plaintiff's claim that Twinings' use of "source" on its label constitutes a nutrition content claim, in violation of 21 CFR 101.13(b). Scarbrough Declaration (Exhibit "3") ¶11. As demonstrated in the preceding paragraphs, the law recognizes that defined terms on product packages – such as "contain" or "provide" – constitute nutrient content claims even though they, like the term "source," merely indicate the presence of a nutrient in a food and not the specific amount of that nutrient in a food. Some Courts have even held the term "source" does indicate a level, a level above zero, and therefore, the use of the word "source" on the label is a nutrient content claim. *Gustavson v. Mars, Inc.*, 2014 U.S. Dist. LEXIS 80139, at *18, 2014 WL 2604774 (N.D. Cal. June 10, 2014) (stating that, at the very least, a food product is a "source" of a given nutrient indicates that the nutrient is present at a level higher than zero, and the fact that the manufacturer chooses to note that its product is a "source" of that nutrient arguably implies that the nutrient is present in substantial quantities).

---

[1] In fact, Jonathan Sprouts promptly took action to correct all issues raised in the warning letter. See FDA Close Out Letter to Jonathan Sprouts, June 11, 2011 (Exhibit "2"). http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm260559.htm

7

### 3. The Jonathan Sprouts FDA Warning Letter Provides that "Source" Is An Undefined Characterization that May Not Be Used in A Nutrient Content Claim

The FDA expressly stated in the Jonathan Sprouts letter that it had "not defined the characterization 'source' by regulation" and "[t]herefore, this characterization may not be used in nutrient content claims." Faithful to this guideline, the court in *Clancy v. Bromley Tea Co.*, 2013 U.S. Dist. LEXIS 112732, at *33 (emphasis added), held:

> Defendants are correct that the terms "contain" and "source of" are not officially defined by FDA regulations as making a nutrient content claim. However, the FDA is not silent with regard to these terms. In a warning letter to Jonathan Sprouts, Inc., *the FDA explained that claims using the word "source" were nutrient content claims.* FAC ¶ 58. By using the term "source," the company had "characterize[d] the level of nutrients of a type required to be in nutrition labeling." *Id.* Since the FDA had not defined the term "source" by regulation, it could not be used in nutrient content claims.

Similarly, in *Lanovaz*, 2014 U.S. Dist. LEXIS 1639, at *20-21, the court also found the term "source" to be prohibited by holding:

> The FDA said that by using the term "source" the company "characterize[d] the level of nutrients of a type required to be in nutrition labeling" and were therefore subject to FDA regulations. *Id.* The warning further stated that the FDA had not defined the characterization "source" by regulation and thus a company could not use "source" in a nutrient content claim. *Id.*

Even in the absence of the Jonathan Sprouts letter, the combined determinations by the FDA and the courts prohibiting the use of the undefined term "source" to describe a nutrient is in accordance with 21 C.F.R. 101.13(b), which prohibits the use of undefined terms to describe nutrients. This has been recognized by other courts. *See, e.g., Lanovaz*, 2014 U.S. Dist. LEXIS 1639, at *18 ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling . . . (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with [FDA] regulation[s]."); *see also* Scarbrough Declaration (Exhibit "3") ¶ 11.

8

It is the intent of the law that nutrient content claims should not include undefined terms, such as "source." As stated in the FDA comments in the Federal Register when announcing the final rules on nutrient content claims:

> By enacting the 1990 amendments, Congress sought to ensure that food labeling, including express and implied nutrient content claims, would be accurate, uniform, and "based on science." 136 Congressional Record S16610 (Oct. 24, 1990) (statement of Sen. Hatch). With respect to nutrient content claims, the principal problem that Congress sought to correct was the use of ambiguous, undefined claims like "light" and "low." *See, e.g.*, 136 Congressional Record H5840 (July 30, 1990) (statement of Rep. Waxman). Experience has shown that consumers were being misled because those terms were being used differently by different manufacturers. *Id.*; 136 Congressional Record H12, 953-954 (Oct. 26, 1990) (statement of Rep. Madigan). Congress recognized that consumers were being hampered in their attempts to achieve a healthy diet by confusing implied nutrient content claims like "light." 136 Congressional Record H12954 (Oct. 26, 1990) (statement of Rep. Moakley).
>
> Because of the misleading character of unregulated, nonstandardized nutrient content claims, *Congress legislated that any claim that is not consistent with FDA regulations misbrands a food.* Section 403(r)(2)(A)(i) of the act states that a food is misbranded if its label or labeling contains a claim that "expressly or by implication * * * characterizes the level of any nutrient * * * of the food unless the claim" complies with regulations promulgated by FDA (emphasis added). Section 403(r)(1)(A) of the act. *By taking this approach, Congress chose to permit only those nutrient content claims that FDA defines or approves, effectively recognizing that unregulated claims mislead the public.*

58 F.R. 2302, 2393-94 (emphases added). The FDA went on to state in its final rule notice:

> Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food. It should thus be clear which type of speech is prohibited and which permitted. *Manufacturers will be on notice that the use of an unapproved nutrient content claim is prohibited conduct.*

58 F.R. 2302, 2397 (emphasis added). The FDA has made this clear in its Guidance for Industry: A Food Labeling Guide (8. Claims), stating:

> N.3. If a [nutrient content claim] is not included in FDA's regulations can it be used on a label?

9

> Answer: No. Only those claims, or their synonyms, that are specifically defined in the regulations may be used. All other claims are prohibited. 21 C.F.R. 101.13(b).

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064908.htm.

Because the term "source" is an undefined nutrient content claim, the term "source" is prohibited from use in a label claim in connection with a nutrient, and Twinings' doing so violates 21 CFR 101.13(b).

### B. Decisions of Other Courts Suggest that Plaintiff's Claim Is Not Preempted.

Numerous other federal decisions have held that state law causes of action based on label claims involving "source" or "natural source" are not preempted.[2] *Lanovaz*, 2014 U.S. Dist. LEXIS 1639, at *21 (denying preemption challenge in case involving the same exact "natural source of antioxidants" claim at issue in this case); *Lanovaz v. Twinings N. Am., Inc.*, 2013 U.S. Dist. LEXIS 25612, at *13-14 (N.D. Cal. Feb. 25, 2013) (denying preemption challenge in case involving the same exact "natural source of antioxidants" claim at issue in this case); *Clancy v. Bromley Tea Co.*, 2013 U.S. Dist. LEXIS 112722, at *32-33 (N.D. Cal. Aug. 9, 2013) (denying preemption challenge in case involving the antioxidant claim "source of " antioxidants); *Khasin v. Hershey Co.*, 2012 U.S. Dist. LEXIS 161300, at *16, 20-21 (N.D. Cal. Nov. 9, 2012) (denying preemption challenge in case involving the antioxidant claim "natural source" of flavanol antioxidants); *Jones v. Conagra Foods, Inc.*, 912 F. Supp. 2d 889, 896 (N.D. Cal. 2012) (denying preemption challenge in case involving the antioxidant claim "Natural Source of Antioxidants");

---

[2] One court in the Northern District of California held that the use of the term "source" does not rise to the level of a nutrient content claim. *See Trazo v. Nestle USA, Inc.*, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013). The *Trazo* opinion has not been followed by other courts addressing this issue. *See, e.g., Gustavson v. Mars, Inc.*, 2014 U.S. Dist. LEXIS 80139, at *21-22 (N.D. Cal. June 10, 2014) ("*Trazo* does not persuade the Court to change its previous decision that Plaintiff's Flavanol Claims are not preempted.").

*De Keczer v. Tetley USA, Inc.*, 2014 U.S. Dist. LEXIS 121465 (N.D. Cal. Aug. 28, 2014) (denying preemption challenge in case involving the antioxidant claim "a natural source of antioxidants"); *Kosta v. Del Monte Corp.*, 2013 U.S. Dist. LEXIS 69319 at *25, 37 (N.D. Cal. May 15, 2013) (denying preemption challenge in case involving the labeling claim "a natural source of antioxidants"); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1121-22 (N.D. Cal. 2013) (denying preemption challenge in case involving the labeling claim "natural source of cocoa flavanols"); *Gustavson v. Mars, Inc.*, 2014 U.S. Dist. LEXIS 80139, at *21-23 (denying preemption challenge in case involving the labeling claim "natural source of cocoa flavanols" "[o]ther courts to confront similar claims . . . have all allowed claims such as Plaintiff's to survive motions to dismiss based on preemption").

Plaintiff respectfully submits that this Court should reconsider its conclusion to the contrary.

### C.     The FDA's Comments in the Federal Register Addresses the Term "Source" as a Nutrient Content Claim.

When announcing its final rules on nutrient content claims, the FDA made comments in the Federal Register in which it withdrew its previous proposal to define the term "source" because "the term 'source' alone does not enable the consumer to conclude that the level of nutrient present is less than 'high.'" 58 F.R. 2302, 2345. Scarbrough Declaration (Exhibit "3") ¶ 11. This fact was noted in various court decisions. For example, in *Gustavson v. Mars, Inc.* the Court held:

> *The published record of the FDA's reasoning on this point supports an inference that the agency considered **the word "source" alone** to characterize the level of nutrients in a product.* Defendants cite a single sentence from the FDA's explanation of its final rule on nutrient content claims in support of the proposition that the term "source" indicates only "that a nutrient is present but does not signify the quantity present." Mot. at 14 (quoting 58 Fed. Reg. 2302, 2345 (Jan. 6, 1993)). The FDA's full reasoning, however, makes clear that *the*

11

> *FDA was, in fact, concerned that the term "source" might lead consumers to conclude that a nutrient was present in a product at significant levels. After initially proposing to allow "source of" statements on food packaging* (provided a nutrient was present at certain prescribed levels), *the FDA reversed course and decided to permit only "good source of" statements after comments to the proposed rule highlighted the potentially confusing nature of "source" standing alone.* See 58 Fed. Reg. at 2345 ("The agency agrees that consumers may not be able to understand the distinction between the meanings of 'high' and 'source.'"). *The final regulation includes only "good source" as a defined term, the FDA explained, because without the modifier "good," the word "source" would "not enable the consumer to conclude that the level of nutrient present is less than 'high.'"* Id. This reasoning indicates that the FDA was concerned that "source of" claims would suggest a certain level of nutrients to consumers.
>
> The Sprouts Letter further supports Plaintiff's claim that the FDA considers "source of" claims to characterize the level of nutrient in a product. While Defendants dispute whether the Sprouts Letter is an official, binding statement of the FDA's position on the term "source," *see* Mot. at 14, Defendants fail to identify any contrary statements made by the agency. Even if, as Defendants argue, the Sprouts Letter is entitled to deference only "proportional to its power to persuade," the Sprouts Letter's persuasiveness is bolstered by its status as the only FDA pronouncement on this topic known to the Court. Furthermore, Defendants' argument that the Sprouts Letter's interpretation is unpersuasive because it conflicts with more reasoned FDA statements lacks merit. As noted above, the Federal Register entry Defendants cite as a supposedly conflicting regulatory interpretation is, when read in context, consistent with the position taken in the Sprouts Letter.

*Gustavson v. Mars, Inc.*, 2014 U.S. Dist. LEXIS 80139, at*17-20, 2014 WL 2604774 (N.D. Cal. June 10, 2014) (emphases added). Similarly, in *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1121-22 (N.D. Cal. 2013) (emphases added), the court stated:

> In addition, despite Mars's assertion that the terms "source" and "found" do not characterize the level of flavonals present in their chocolate, *the only relevant authority presented at this stage indicates that the FDA disagrees with Mars's position.* See Mars Opp'n Ex. 2 at 10 ("These claims are nutrient content claims subject to [21 U.S.C. § 343(r)(1)(A)] because they characterize the level of nutrients of a type required to be in nutrition labeling . . . *by use of the term 'source.'*"). While Mars disputes whether the March 24, 2011 Warning Letter is a binding statement of the FDA's position on the term "source," Mars Mot. at 20, it has not identified any other FDA statements that contradict this letter.

12

For all these reasons, Plaintiff respectfully submits that the term "source" does characterize the level of a nutrient in a food. Scarbrough Declaration (Exhibit "3") ¶¶ 9, 11.

### D. Twinings' Position Conflicts with the Language of the Relevant Regulations.

Twinings' argument conflicts with 21 C.F.R. §101.13(b) and §101.54(c), which authorize label claims that food "contains," or "provides" a nutrient, "provided that the food contains 10 to 19 percent of the RDI or the DRV per reference amount customarily consumed" of that nutrient. 21 C.F.R. §101.13(b)(4) specifies that synonyms of FDA defined terms may be used on a label, but pursuant to 21 C.F.R. §101.54(c) and 21 C.F.R. §101.13(b) any synonym of the terms "contains" or "provides" would have to be made in accordance with the definitions of those terms contained in 21 C.F.R. §101.54(c).

Claiming that a food is a "source" of a nutrient is equivalent to claiming the food "contains" such a nutrient or that the food "provides" that nutrient to anyone consuming the food. Therefore, Twinings' claim that its teas are a "source" of antioxidants is akin to saying that Twinings tea "contains antioxidants" or Twinings tea "provides antioxidants" and therefore, violates 21 C.F.R. §101.13(b) and §101.54.

To be more specific, 21 C.F.R. 101.54(g) provides that a nutrient content claim characterizing the level of antioxidant nutrients present in a food may only be used on the label or in the labeling of that food when:

(1)  An RDI (Reference Daily Intake) has been established for each of the nutrients;

(2)  The nutrients that are the subject of the claim have recognized antioxidant activity; that is, when there exists scientific evidence that, following absorption from the gastrointestinal tract, the substance participates in physiological, biochemical, or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions;

13

> (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for a § 101.54(b) "High" claim or 101.54(c) "Good Source" claim, or a 101.54(c) "More" claim (all of which require that the nutrient be present at a minimum of 10% of its RDI);
>
> (4) The names of the nutrients that are the subject of the claim are included as part of the claim.

Twinings tea products fail to meet a single one of these requirements: (1) there is no RDI for any of the flavonoid antioxidants claimed to be in Twinings tea; (2) the flavonoid antioxidants claimed to be in Twinings tea have no recognized antioxidant effect following absorption in the gastrointestinal tract; (3) because there is no RDI for any of the flavonoid antioxidants claimed to be in Twinings tea, they are not present in Twinings tea at the minimum 10% of RDI level; and (4) the Twinings tea labels fail to disclose the name of any antioxidant as part of the "natural source of antioxidants" claim they set forth. Scarbrough Declaration (Exhibit "3") ¶¶ 9-14.

As shown above, by claiming its teas are a "source" of antioxidants, Twinings affirmatively represents that the teas contain at least 10 percent of the RDI for antioxidants. *See* 21 C.F.R. §101.13(b). Consequently, the statement "Natural Source of Antioxidants" is a nutrient content claim that characterizes the level of antioxidant nutrients present in Twinings tea, violating 21 C.F.R. 101.54(g) and causing Twinings tea to be mislabeled and misbranded.

Finally, the label misrepresentations on Twinings tea contravene the plain language of 21 C.F.R. §101.65(c)(3). That regulation provides:

> Claims may be made that a food contains or is made with an ingredient that is known to contain a particular nutrient, or is prepared in a way that affects the content of a particular nutrient in the food, *if the finished food is either "low" in or a "good source" of the nutrient that is associated with the ingredient or type of preparation.* If a more specific level is claimed (e.g., "high in ___"), that level of the nutrient must be present in the food.

14

21 C.F.R. §101.65(c)(3) (emphasis added). This regulation thus mandates that claims that products contain or are made with an ingredient that is known or represented to contain a particular nutrient can only be made if the products are a "good source" of the nutrient and thus any such nutrient must be present at a minimum 10% of RDI level. This interpretation is made clear by the comments in the Federal Register the FDA made when announcing its final rules on nutrient content claims, in which the FDA stated:

> In conclusion, a claim that states or implies a characteristic that distinguishes a particular nutritional attribute of an ingredient will generally be considered an implied nutrient content claim. Whether or not it is a nutrient content claim will depend on the context in which it is presented, taking the entire label into consideration. The level of the ingredient may be implicit or explicit. The agency has described generically in new § 101.65(c)(3) circumstances under which such implied claims can be made. The regulation states that claims may be made that a food contains or is made with an ingredient that is known to contain a particular nutrient, or is prepared in a way that affects the content of a particular nutrient in the food, *if the food is either low in or a good source of the nutrient* that is associated with the ingredient or type of preparation. If a more specific level is claimed (e.g., "high in - - - - -"), that level of the nutrient must be present in the food. . . . The agency believes that the approach that it is taking in § 101.65(c)(3) strikes an appropriate balance between the interest of industry in making claims and the consumers' interest that claims that appear on the label accurately and fairly characterize the level in the food of the nutrient that, either explicitly or implicitly, is the subject of the claim.

Because Twinings' claim that its teas are a "Natural Source of Antioxidants" violates the plain language of multiple regulations, Plaintiff respectfully submits that reconsideration of the Order granting the Motion to Dismiss is appropriate.

### E. Tea is not Exempt from the Nutrient Content Rules Contained in 21 C.F.R. §§ 101.13, 101.54 or 101.65

In the memorandum supporting its Motion to Dismiss, Twinings erroneously maintained that 21 C.F.R. § 101.9(j)(4), when read in conjunction with 21 C.F.R. § 101.9(c), exempts tea from the nutrient content claim rules contained in 21 C.F.R. § 101.13, 21 C.F.R. § 101.54, and 21 C.F.R. § 101.65.

15

In actuality, as made clear by the first line of 21 C.F.R. § 101.9(j) (emphasis added)—which states, "[t]he following foods are exempt from *this section*"—the exemption contained in 21 C.F.R. 101.9(j)(4) *only* extends to the nutritional labeling rules contained in section 21 C.F.R. § 101.9. These rules pertain to the familiar Nutrition Facts Table typically found on the back or side of food packages. 21 C.F.R. § 101.9(j)(4) thus exempts products like tea (that often lack the nutrients covered by the Nutrition Facts Table) from having to place a Nutrient Facts Table with nothing but zeros on its label, provided that they bear "no nutrition claims or other nutrient information in any context on the label or in labeling or advertising." 21 C.F.R. § 1.01(j)(4) does not exempt tea or any other food from the nutrient content claims rules contained in 21 C.F.R. § 101.13, 21 C.F.R. § 101.54, and 21 C.F.R. § 101.65. *See* Scarbrough Declaration (Exhibit "3") ¶ 10. In fact, the FDA has targeted tea companies for making improper nutrient content claims.

Moreover, it is plain from the text of 21 C.F.R. § 101.9(j)(4) that no exemption of any sort would apply in the present case because Twinings tea bears "nutrition claims or other nutrient information in any context on the label or in labeling or advertising" and "[c]laims or other nutrition information subject the food to the provisions of this section.

With the regulations placed in proper context,[3] it is apparent that the FDA does not exempt tea from its "nutrient content claim" regulations. It only exempts tea from the labeling rules of 21 C.F.R. § 101.9, and only does so in circumstances that do not apply here. To the extent the Court premised its dismissal on 21 C.F.R. § 101.9, Plaintiff respectfully submits there is additional reason to reconsider the dismissal.

### III. CONCLUSION

---

[3] Because Twinings made these misrepresentations about a supposed, but nonexistent, exemption in its Reply, Plaintiff has not previously had an opportunity to respond to the allegations.

16

For the reasons stated above, Plaintiff respectfully requests that the Court reconsider its dismissal Order; withdraw its Judgment; and enter a new Order denying the Motion to Dismiss or at a minimum granting further leave to amend.

Dated: March 5, 2015

                        Respectfully submitted,

                        /s/ Kenneth R. Shemin
                        Kenneth R. Shemin, ABA No. 78138
                        **SHEMIN LAW FIRM, PLLC**
                        3333 Pinnacle Hills Parkway, Suite 603
                        Rogers, AR 72758
                        Telephone: (479) 250-4764
                        Facsimile: (479) 845-2198

                        /s/ Thomas P. Thrash
                        Thomas P. Thrash (ABA No. 80147)
                        Marcus Neil Bozeman (ABA No. 95287)
                        THRASH LAW FIRM, P.A.
                        1101 Garland Street
                        Little Rock, AR 72201
                        Telephone: (501) 374-1058
                        Facsimile: (501) 374-2222

                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I, Kenneth R. Shemin, the undersigned, hereby certify that on March 5, 2015, a true and correct copy of the foregoing will be served by electronic mail and electronic notification through the District Court CM/ECF electronic filing system upon the following counsel of record:

Kevin A. Crass
R. Christopher Lawson
**Friday, Eldredge & Clark, LLP**
400 W. Capitol Ave., Suite 2000
Little Rock, AR 72201-3522

David L. Wallace
Michael R. Kelly
**HERBERT SMITH FREEHILS**
   **NEW YORK, LLP**
450 Lexington Ave., 14th Floor
New York, NY 10017

                                                 /s/ Kenneth R. Shemin
                                                 Kenneth R. Shemin